IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

SARAH DEPPEN and SABRINA BROCK,
individually

                                        Plaintiffs,

v.

ELDER CARE BUSINESS, CORPORATION
and LINDA LITWAK, in her individual
capacity.

                                        Defendants.

**COMPLAINT**

Civ. Action No. _____

**PRELIMINARY STATEMENT**

1. Plaintiffs, Sarah Deppen and Sabrina Brock ("Plaintiffs"), bring this action against their former employers, Defendants, Elder Care Business Corporation and Linda Litwak ("Defendants") to recover unpaid overtime wages, statutory damages, and relief for violations of the Federal Fair Labor Standards Act, 29. U.S.C. §§ 201, et seq. ("FLSA") and the New York State Labor Law, N.Y. Labor Law §§ 190, et seq., and N.Y. Labor Law § 215 ("NYLL"), as well as statutory damages for violations of the Internal Revenue Code ("IRC"), 26 U.S.C. § 7434.

2. During plaintiffs' employment as home health care workers, defendants improperly classified them as "independent contractors" as part of a scheme to avoid tax liability under the Federal Insurance Contributions Act and the Federal Unemployment Tax Act as well as their worker's compensation obligations; failed to pay overtime wages for every hour worked over forty hours per week; failed to comply with wage notice and wage statement requirements under the NYLL; and retaliated against the plaintiffs by firing them for discussing and raising complaints about the defendants' misclassification scheme, wages and working conditions.

- 1 -

# I. JURISDICTION AND VENUE

3. This court has jurisdiction over plaintiffs' claims pursuant to, 29 U.S.C. § 216(b) of the FLSA, 28 U.S.C. § 1331, this action arising under laws of the United States, 28 U.S.C. § 1337, this action arising under the Acts of Congress regulating commerce, and the IRC 26 U.S.C. § 7434 and 28 U.S.C. § 1340.

4. Jurisdiction over plaintiffs' claims for declaratory relief is conferred by 28 U.S.C. §§ 2201 and 2202.

5. This court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a), because those claims arise out of the same common nucleus of operative fact as the federal claim, as to form part of the same controversy under Article III of the United States Constitution.

6. Venue is proper in the Western District of New York pursuant to 28 U.S.C. § 1391(b)(1) because defendants reside in this district and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

# II. PARTIES

## A. Plaintiff Sarah Deppen

7. Plaintiff Sarah Deppen ("Plaintiff Deppen") is an adult individual who resides in Monroe County, New York.

8. At all times relevant to this action, Plaintiff Deppen was over the age of 20 when she was employed by the defendants.

9. At all times relevant to this action, Plaintiff Deppen was an "employee" of the defendants as defined in FLSA, 29 U.S.C. §203(e), N.Y. Labor Law §§190(2), and 651(5), and N.Y. Comp. Codes R. & Regs. Tit. 12, §142-2.14.

10. At all times relevant to this action, Plaintiff Deppen was "engaged in commerce" or "working on goods or materials that have been moved in or produced for commerce" while working for the defendants as defined in 29 U.S.C. §203(s).

11. Plaintiff Deppen has agreed and consented in writing to be a party plaintiff in this action, as required by 29 U.S.C. §216(b). See Exhibit A.

**B. Plaintiff Sabrina Brock**

12. Plaintiff Sabrina Brock ("Plaintiff Brock") is an adult individual who resides in Monroe County, New York.

13. At all times relevant to this action, Plaintiff Brock was over the age of 20 when she was employed by the defendants.

14. At all times relevant to this action, Plaintiff Brock was an "employee" of the defendants as defined in FLSA, 29 U.S.C. §203(e), N.Y. Labor Law §§190(2), and 651(5), and N.Y. Comp. Codes R. & Regs. Tit. 12, §142-2.14.

15. At all times relevant to this action, Plaintiff Brock was "engaged in commerce" or "working on goods or materials that have been moved in or produced for commerce" while working for the defendants as defined in 29 U.S.C. §203(s).

16. Plaintiff Brock has agreed and consented in writing to be a party plaintiff in this action, as required by 29 U.S.C. §216(b). See Exhibit B.

### C. Elder Care Business Corporation

17. Defendant Elder Care Business Corporation ("Corporate Defendant") is a New York domestic business corporation with its principal executive office is located at 3245 Latta Road, Rochester, New York 14612.

18. Corporate Defendant provides companion care services, health care and nursing services, as well as medical and non-medical support to elderly clients.

19. Corporate Defendant regularly conducts business in Monroe County, New York and elsewhere within the jurisdiction of this court.

20. At all times relevant to this action, Corporate Defendant was an "employer" and "employed" plaintiffs as defined in 29 U.S.C. §§ 203(d) and 203(g), and N.Y. Labor Law §§ 190(3) and 651(6).

21. Corporate Defendant is an "enterprise engaged in commerce or in the production of goods for commerce" as defined in 29 U.S.C. §§ 203(s), 206(a), and 207(a).

22. Corporate Defendant's annual gross volume of business done was not less than $500,000 in the past fiscal year and they employ anywhere between thirty-five (35) and forty (40) employees at a time.

23. At all times relevant to this action, Corporate Defendant knew or should have known that any home health care worker it employed was not exempt under the FLSA's companionship exemption if more than 20 percent of the home health care worker's workweek was spent doing general household work.

### D. Defendant Linda Litwak

24. Defendant Linda Litwak ("Defendant Litwak") is the president, owner, agent and/or principal of the Corporate Defendant and resides in Monroe County, New York.

25. Defendant Litwak is an "employer" and "employed" plaintiffs as defined in 29 U.S.C. §§ 203(d) and 203(g), and N.Y. Labor Law §§ 190 (3) and 651(6).

26. Defendant Litwak had the power to and did exercise control over all aspects of the day-to-day functions of Corporate Defendant.

27. Defendant Litwak had operational control over the operational enterprise, including actively managing, supervising and directing the business operations.

28. Defendant Litwak regularly employed and immediately supervised home health care employees in order to operate the business of the Corporate Defendant.

29. Defendant Litwak had the power to hire and fire employees.

30. Defendant Litwak had the power to establish, and did establish, the plaintiffs' terms and conditions of employment.

31. Defendant Litwak had control over employee work schedules.

32. Defendant Litwak had the ability to determine the rate and method of employee payment.

33. Defendant Litwak had the power to direct employees' work and gave instructions regarding general household work and client-patient care.

34. Defendant Litwak maintained the employment records of the Corporate Defendant.

35. Defendant Litwak acted directly and indirectly in the Corporate Defendant's interest in relation to its employees.

36. At all times relevant to this action, Defendant Litwak knew or should have known that any home health care worker she employed was not exempt under the FLSA's companionship exemption if more than 20 percent of the home health care worker's workweek was spent doing general household work.

### III. STATEMENT OF FACTS

#### A. Plaintiffs' Employment Conditions

37. Defendant Litwak hired plaintiffs to work as companion workers for the defendants after having them complete an employment application, interviewing them and discussing their education, experience, skills, employment history and references.

38. Plaintiff Deppen began employment with the defendants around November 2015 and worked in such capacity until June 30, 2016.

39. Plaintiff Brock began employment with the defendants around January 2016 and worked in such capacity until June 30, 2016.

40. Plaintiffs' job duties and responsibilities included, but were not limited to, personal care services to clients: assisting clients with walking, washing, bathing, dressing and brushing teeth; putting clients to bed; preparing, cooking and serving meals to clients; cleaning up and doing dishes after meals; toileting clients; giving medication to clients; doing clients' dirty laundry and folding clean laundry; cleaning the inside of the home by dusting and vacuuming; making clients' beds; providing a safe environment for clients; talking and playing games with clients; writing reports for the defendants; keeping daily records of the personal care services provided to clients as well as notes regarding clients' overall health and demeanor; and recording daily hours worked on a notebook that the defendants maintained as well as emailing hours worked directly to the defendants.

41. Defendant Litwak established plaintiffs' work schedules.

42. Defendant Litwak assigned plaintiffs to work for specific clients.

43. Defendant Litwak trained plaintiffs on how to perform their job duties, giving them instructions on how to care for clients and their homes.

44. Defendant Litwak provided plaintiffs with supplies and materials needed to perform home care services.

45. Defendant Litwak required plaintiffs to regularly communicate progress of their work through written and verbal reports.

46. Plaintiffs were instructed to communicate any issues related to client care and working conditions to the defendants, including but not limited to issues related to client falls, sores, rashes and unexpected guests.

47. Plaintiffs' work was inspected and reviewed by Defendant Litwak.

48. Plaintiffs could not take time off without defendants' knowledge or approval.

49. Defendant Litwak was responsible for obtaining clients for the Corporate Defendant.

50. Defendant Litwak presented plaintiffs as employees to clients and plaintiffs performed work assignments under the Corporate Defendant's name, Elder Care Business Corporation.

51. Defendant Litwak set client rates and billed and collected monies directly from clients.

52. Defendants paid plaintiffs their wages through an online check delivery service called Deluxe Checks.

53. Checks were signed by Defendant Litwak and defendants were indicated as the payors.

54. Plaintiffs were not furnished with a wage notice upon hire stating their rate of pay, including overtime rates of pay, how they would be paid, and their regular pay day.

55. At no time during plaintiffs' employment with the defendants were they furnished with wage statements reflecting total number of hours worked, rates of pay, how she was paid, her gross and net wages, and itemized deductions.

**B. <u>Defendants' Willful Filing of Fraudulent Information Returns</u>**

56. In February 2016, Plaintiff Deppen received from the defendants a 2015 Form 1099-MISC, which reported $1,710.00 in non-employee compensation.

57. Defendants filed a copy of this same 2015 Form 1099-MISC with the IRS reporting $1,710.00 of non-employee compensation paid to Plaintiff Deppen.

58. In February 2017, Plaintiff Deppen received from the defendants a 2016 Form 1099-MISC, which reported $11,682.50 in non-employee compensation.

59. Defendants filed a copy of this same 2016 Form 1099-MISC with the IRS reporting $11,682.50 of non-employee compensation paid to Plaintiff Deppen.

60. In February 2017, Plaintiff Brock received from the defendants a 2016 Form 1099-MISC, which reported $11,000.50 in non-employee compensation.

61. Defendants filed a copy of this same 2016 Form 1099-MISC with the IRS reporting $11,000.50 of non-employee compensation paid to Plaintiff Brock.

62. The 2015 Form 1099-MISC and 2016 Forms 1099-MISC that defendants submitted to the IRS were false and meant to deceive the plaintiffs and the IRS.

63. Defendants wrongly classified plaintiffs as "independent contractors" to avoid the tax consequences associated with paying FICA and related payroll taxes on plaintiffs' wages.

64. After Plaintiff Deppen received the 2015 Form 1099-MISC, she repeatedly requested that the defendants properly classify her as an employee and issue her correct tax forms.

65. After Plaintiff Deppen received the 2016 Form 1099-MISC, she repeatedly requested that the defendants properly classify her as an employee and issue her correct tax forms.

66. After Plaintiff Brock received the 2016 Form 1099-MISC, she repeatedly requested that the defendants properly classify her as an employee and issue her correct tax forms.

67. Defendants failed to issue the correct tax forms for plaintiffs.

68. Defendants had actual knowledge that plaintiffs were their employees.

69. Defendants had actual knowledge that a 2015 Form W-2 and 2016 Form W-2 with the correct notation and calculation of plaintiffs' actual wages and withholdings were the appropriate and legally correct yearly tax forms that should have been issued by defendants to plaintiffs.

70. For the 2015 and 2016 tax years, defendants acted willfully and fraudulently to purposely file an incorrect tax form with the IRS.

**C. Plaintiff Deppen's Wages and Working Conditions**

71. At the start of Plaintiff Deppen's employment around November 2015, defendants agreed to compensate Plaintiff Deppen at $10.00 per hour.

72. Around February 2016, defendants agreed to compensate Plaintiff Deppen at $10.00 per hour for her work on the weekdays and $12.00 per hour for the work she performed on the weekends.

73. Plaintiff Deppen worked for the defendants at two different work sites in clients' homes.

74. Plaintiff Deppen's work schedule was set and determined by the defendants.

75. Plaintiff Deppen took care of multiple elderly clients who suffered from a variety of health problems.

76. Plaintiff Deppen spent over twenty percent of her work time performing general household work, which included meal preparation and bed making.

77. The duties assigned to Plaintiff Deppen by defendants included non-exempt general household work that consisted of more than 20 percent of her time.

78. Plaintiff Deppen typically worked five (5) days per week, from Sunday through Thursday, for eight (8) hours per day, from 10:00 p.m. through 6:00 a.m., totaling approximately forty (40) hours per week.

79. Throughout her employment, Plaintiff Deppen worked in excess of 40 hours during a work week on several occasions.

80. For the weeks when Plaintiff Deppen worked in excess of 40 hours, defendants did not pay plaintiff overtime wages.

**D. Plaintiff Brock's Wages and Working Conditions**

81. At the start of Plaintiff Brock's employment around January 2016, defendants agreed to compensate Plaintiff Brock at $10.00 per hour for her work on the weekdays and $12.00 per hour for the work she performed on the weekends.

82. Plaintiff Brock worked for the defendants at a client's home.

83. Plaintiff Brock's work schedule was set and determined by the defendants.

84. Plaintiff Brock took care of multiple elderly clients who suffered from a variety of health problems.

85. Plaintiff Brock spent over twenty percent of her work time performing general household work, which included cleaning the client's homes, meal preparation, bed making, and clothes washing.

86. The duties assigned to Plaintiff Brock by defendants included non-exempt general household work that consisted of more than 20 percent of her time.

87. Plaintiff Brock typically worked six (6) days per week, from Sunday through Friday, for eight (8) hours per day, from 2:00 p.m. through 10:00 p.m., totaling approximately forty-eight (48) hours per week.

88. Throughout her employment, Plaintiff Brock regularly worked in excess of 40 hours during a work week.

89. For the weeks when Plaintiff Brock worked in excess of 40 hours, defendants did not pay plaintiff overtime wages.

90. At the start of Plaintiff Brock's employment, defendants informed her that they do not pay overtime pay to employees.

### E. Plaintiffs' Retaliatory Discharge

91. In February 2016, plaintiffs discussed their wages rates with each other and the defendants' failure to pay overtime pay when they worked more than 40 hours per work week.

92. During this conversation, Plaintiff Deppen discovered the defendants' system of paying certain employees $10 per hour for work performed on weekdays and $12 per hour for

work performed on weekends.

93. Following this conversation, Plaintiff Deppen complained to Defendant Litwak about not being paid at $12 per hour for work performed on weekends.

94. Defendant Litwak ordered Plaintiff Deppen not to speak with Plaintiff Brock and other coworkers about wages and overtime pay.

95. In March 2016, plaintiffs complained to Defendant Litwak about not being properly trained to administer morphine to one of their clients, Gena Enfonde.

96. Defendant Litwak insisted that plaintiffs administer morphine to the client or otherwise lose their jobs.

97. Following this conversation, Plaintiff Deppen filed a complaint with the New York State Department of Health to report defendants' potential violations of health laws.

98. In May 2016, plaintiffs complained to Defendant Litwak about being misclassified as independent contractors, the tax implications of this misclassification, and their concern with taxes not being withheld from paychecks.

99. Defendant Litwak ignored the plaintiffs and refused to respond to plaintiffs' complaints.

100. Throughout May and June 2016, plaintiffs talked to each other and to other co-workers about their wages, defendants' failure to pay overtime pay, and about being misclassified as independent contractors.

101. On June 30, 2016, Defendant Litwak fired Plaintiff Deppen by telephone call telling her that her services were no longer needed.

102. On July 5, 2016, Defendant Litwak fired Plaintiff Brock by sending a text message telling her that her services were no longer needed.

103. In September 2016, the New York State Department of Health found Plaintiff Deppen's complaint regarding violations of public health laws to be substantiated and directed the defendants to immediately stop providing home care services.

## IV. CLAIMS AGAINST DEFENDANTS

### FIRST CAUSE OF ACTION
### Internal Revenue Code (IRC) – Willful Filing of Fraudulent Information Returns

104. In each tax year during the period of plaintiffs' employment, defendants knowingly issued the plaintiffs an incorrect IRS Form 1099-MISC.

105. In each tax year defendants should have issued to plaintiffs correct IRS W-2 Tax Forms with wages noted and calculated and the correct withholdings noted, calculated and withheld.

106. At all times, defendants had actual knowledge that an accurate IRS W-2 Tax Form with the correct wages noted and calculated and the correct withholdings noted, calculated, and withheld was the legally required tax form for plaintiffs and that the defendants should have issued to plaintiffs an accurate tax document and not an IRS Form 1099-MISC.

107. Defendants acted willfully and fraudulently to purposely issue incorrect IRS Form 1099-MISC Tax Forms to plaintiffs during their employ.

108. Defendants improperly characterized plaintiffs as independent contractors and failed to pay plaintiffs their overtime pay under federal and state labor laws throughout their employment: (a) to avoid paying the required employer share of FICA and related employer tax withholdings and state unemployment taxes, (b) to defraud federal and state taxing authorities and lessen defendants' tax obligations and the amount of its workers' compensation insurance premium, and (c) to gain an unfair competitive advantage against industry competitors that otherwise adhered to their employer related tax obligations.

109. Defendants had actual knowledge that an IRS Form 1099-MISC for 2015 and 2016 issued to plaintiffs were incorrect.

110. Defendants acted willfully and fraudulently by purposeful filing incorrect information returns that misreported plaintiffs' wages as non-employee compensation.

111. True and accurate copies of the IRS Form 1099-MISC Tax Forms issued by defendants to plaintiffs for their work in 2015 and 2016 are attached hereto as Exhibit C.

112. IRS Form 1099-MISC constitutes an "information return" within the meaning of U.S.C. §§7434(a), (f) and 6724(d)(1)(A)(i) and 6041(a).

113. Defendants knew when they issued IRS Form 1099-MISC Tax Forms to the plaintiffs that they were incorrect information returns.

114. Defendants knew and expected the IRS would rely on the accuracy and truth of the information returns submitted by defendants.

115. As required by 26 U.S.C. § 7434(d), plaintiffs have provided a copy of these forms to the Internal Revenue Service.

116. Plaintiffs have sustained damages as a result of the defendants' wrongful conduct.

**SECOND CAUSE OF ACTION**
**Fair Labor Standards Act (FLSA) – Failure to Pay Overtime Wages**

117. Defendants failed to pay the plaintiffs the statutorily mandated overtime compensation at one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. §207(a)(1).

118. Defendants' failure to pay plaintiffs overtime compensation was willful within the meaning of 29 U.S.C. § 255(a), since they required plaintiffs to work over 40 hours per week and

enforced a policy of not paying overtime pay to any employee despite the total number of hours worked per week.

119. As a result of defendants' unlawful acts, plaintiffs have been deprived of overtime compensation and are entitled to recover from defendants their unpaid overtime wages, an additional equal amount as liquidated damages, costs and reasonable attorneys' fees, pursuant to 29 U.S.C. § 216(b).

## THIRD CAUSE OF ACTION
### Fair Labor Standards Act (FLSA) – Retaliation

120. Defendants discharged plaintiffs for complaining about wage and hour violations, in violation of 29 U.S.C. §215(a)(3).

121. Plaintiffs' complaints for unpaid overtime wages were based on a reasonable and good faith belief that defendants violated wage and hour laws. As a result of defendants' unlawful acts, plaintiffs are entitled to recover from the defendants payment of lost wages, an additional equal amount as liquidated damages, costs and reasonable attorney's fees, pursuant to 29 U.S.C. § 216(b).

## FOURTH CAUSE OF ACTION
### New York Labor Law (NYLL) – Failure to Pay Overtime Wages

122. Defendants failed to pay plaintiffs overtime premiums, at one and a half times their regular rate of pay, for all hours worked in excess of forty hours per week in violation of NYLL Art. 19, § 650, *et seq.*, and its implementing regulations, 12 N.Y.C.R.R. § 142-3.2.

123. As a result of Defendants' unlawful acts, plaintiffs are entitled to recover from defendants their unpaid overtime premium wages, an additional equal amount as liquidated damages, costs and reasonable attorneys' fees, pursuant to NYLL Art. 6 §198.

## FIFTH CAUSE OF ATION
### New York Labor Law (NYLL) – Failure to Comply with Notice Requirements

124. Defendants failed to issue to plaintiffs the legally mandated written pay notice at the time of hire, in violation of NYLL Art. 6 § 195(1).

125. Defendants failed to issue to plaintiffs legally mandated wage statements in violation of NYLL Art. 6 § 195(3).

126. Defendants' violations of wage notice and wage statement requirements were intentional and willful. Defendants knew or should have known that the practices described above were unlawful.

127. Defendants failed to make a good faith effort to comply with state wage laws.

128. As a result of defendants' violations of NYLL Art. 6 §§ 195(1) and (3), plaintiffs are entitled to recover damages together with costs and reasonable attorneys' fees in accordance with NYLL Art. 6 § 198

## SIXTH CAUSE OF ACTION
### New York Labor Law (NYLL) – Retaliation

129. Defendants discharged plaintiffs for complaining about their employer's misconduct that they reasonably and in good faith believed violated the labor laws of the state of New York, in violation of NYLL Art. 7 §215.

130. Defendants' retaliatory actions were intentional and willful. Defendants knew or should have known that discharging the plaintiffs for complaining about state labor laws and asserting their rights was unlawful.

131. Defendants failed to make a good faith effort to comply with state labor laws.

132. Plaintiffs provided notice to the Attorney General of this action before the filing of this Complaint, pursuant to NYLL Art. 7 § 215.

133. As a result of Defendant's unlawful acts, plaintiffs are each entitled to lost compensation, liquidated damages in an amount not to exceed $20,000, costs, and reasonable attorney's fees, pursuant to NYLL Art. 7 §215.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, request that this honorable court enter an order granting:

A. Judgment to plaintiffs for their FLSA overtime claims and awarding Plaintiffs their overtime wages and an equal amount in statutory liquidated damages;

B. Judgment to plaintiffs for their claims of retaliatory discharge under FLSA as well as back pay and front pay damages;

C. Judgment to plaintiffs for their claims relating to defendants' willful fraudulent filing of information forms in 2015 and 2016 and awarding them statutory damages amounting to $5,000 for each fraudulent information or the sum of (1) any actual damages sustained by the plaintiffs as a proximate result of the fraudulent information returns;

D. Judgment to plaintiffs for their NYLL overtime wages and awarding Plaintiffs their unpaid overtime wages and an equal amount in statutory liquidated damages;

E. Fifty dollars ($50.00) for each day that defendants failed to provide a wage notice in violation of NYLL § 195(1), but not to exceed $5,000 for each plaintiff;

F. Two hundred fifty dollars ($250.00) for each day that defendants failed to provide a wage statement in violation of NYLL § 195(3), but not to exceed $5,000 for each plaintiff;

G. Judgment to Plaintiffs for their claims of retaliatory discharge under NYLL as well as back pay, front pay, and statutory liquidated damages capped at $20,000 under NYLL § 215(2)(a);

H. Appropriate declaratory and injunctive relief to remedy violations as provided under N.Y. Labor Law § 198(1-b), and 198(1-d);

I. Prejudgment and post-judgment interest as defined in NYLL § 198(1-a);

J. Plaintiffs their costs and reasonable attorney's fees as defined in 29 U.S.C. § 216(b), 26 U.S.C. § 7434(b), and N.Y. Labor Law § 198(1-a);

K. Such other relief as this Court shall deem just and proper.

Respectfully submitted,

/s/ Elizabeth Koo
Elizabeth Koo, Esq.
Peter O'Brian Dellinger, Esq.

Empire Justice Center
1 West Main Street, Suite 200
Rochester, NY 14614
Phone: 585-295-5728
Fax: 585-454-2518

ekoo@empirejustice.org
pdellinger@empirejustice.org

**ATTORNEYS FOR THE PLAINTIFFS**

Dated: Rochester, New York
May 11, 2017